BALTIMORE STEAM-PACKET CO. v. PATTERSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

No. 375.

1. ADMIRALTY—JURISDICTION—MARITIME CONTRACT.

A contract by which a steamship company agreed to reserve space for certain cargo for foreign shipment, and the other party bound itself to furnish such cargo at a specified rate of freight, is maritime in its nature,

and an action to recover damages for its breach is within the jurisdiction of a court of admiralty.[1]

**2. SHIPPING—CONTRACT FOR CARGO SPACE—CONNECTING LINES.**

An engagement of cargo space from a steamship line for a shipment of cotton at an agreed rate of freight, made by a company operating a connecting line, constitutes a contract, which binds the latter to furnish the cargo, or respond in damages, although it was in fact made in behalf of a third party intending to make a through shipment over both lines, where such fact was not disclosed.

Appeal from the District Court of the United States for the District of Maryland, in Admiralty.

J. Southgate Lemmon and C. Baker Clotworthy, for appellant.

Stewart Brown and George Stewart Brown, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

PURNELL, District Judge. The appellant is a common carrier operating a line of steamers between the ports of Baltimore, Md., and Norfolk and Portsmouth, Va. The appellees are the agents of the Johnston Line of steamers, also common carriers between the port of Baltimore, Md., and Liverpool and other foreign ports. Both lines have competitors for freight, but do not compete with each other; the one carrying export freight exclusively, and the other, through connecting railroads, carrying and controlling principally inland or domestic freights. Appellees sought, through the appellant, to compete for export business arising in the interior, and quoted ocean rates to meet those of ships sailing from Norfolk and Portsmouth direct to foreign ports. In May, 1898, appellees, having no agent at Norfolk, corresponded with the general agent of appellant. On the 18th of May, Mr. Key Compton, the general agent of appellant, wired the appellees that he could offer them 1,000 bales of cotton for Liverpool, late June sailing, at 25 cents, to which offer appellees replied the same day, saying they would take the 1,000 bales of cotton at 27 cents, but, "if necessary, you may accept twenty-six cents." On May 19th, Compton wired he had booked the 1,000 bales of cotton, for late June sailing, at 26 cents, and indorsed his "booking agreement" covering the same. This agreement is the basis of the libel, and is as follows:

"Engagement No. 244.
"Baltimore Steam Packet Company.
"(Bay Line.)
"Norfolk, Va., May 19th, 1899.
"Dear Sir: We have this day booked with you, via Johnston Line, from Baltimore to Liverpool, 1,000 bales of cotton at ocean rates, 26 cents per one hundred pounds. Sailing about late June, 1898.
"Respectfully,                              Wm. Randall, Agent.
"To Messrs. Patterson, Ramsay & Co., Baltimore, Md."

There was correspondence between the parties not pertinent to this libel. The cotton was not delivered for the ship sailing on the 16th,

---

[1] Admiralty jurisdiction of contracts, see notes to The Richard Winslow, 18 C. C. A. 347, and Boutin v. Rudd, 27 C. C. A. 530.

106 F.—47

or later in June, and the space reserved was filled with hay at a lower rate of freight. Nor was the cotton sent forward at a later date, but on June 21st, Compton, general agent, acknowledged the failure and inability to secure it to fill this engagement, and requested appellees "to fill the room with such other freight as could be secured, and charge us with whatever loss you may sustain." Appellees filed this libel in personam, claiming the difference between the freight on the cotton and freight on hay, with which the reserved space was filled,—a loss of $695.02,—for which amount a decree was entered in the district court. 101 Fed. 296. The appeal is from this decree.

There is in the correspondence some mention of, and an attempt to draw into the controversy, other parties; but the "agreement" was between appellees and the agent of appellant exclusively, and, if the Baltimore Steam-Packet Company has a cause of action against some one else, that question is aliunde this proceeding, and would probably be cognizable in another tribunal, not a court of admiralty. When this side issue is eliminated, much of the record and briefs may be put out of sight. The engagement indicates that it was well understood by one party that the cotton was to be furnished for late June sailing, and by the other that as much of the ship's space as necessary was to be reserved. The rate was fixed for the Johnston Line at 26 cents, and what the constituent of Compton, the steam-packet company, was to make by the transaction was no part of the contract or agreement, but was a matter exclusively within and under the control of that company. Nor is it disclosed in the record. The Johnston Line was bound by the engagement to reserve and furnish the necessary space at the fixed rate. The space was reserved by and for the Bay Line, or steam-packet company, through its general agent.

There is no force in any of the assignments of error in the record. The contract was essentially maritime in its nature, and the district court, sitting as a court of admiralty, had jurisdiction of the subject. Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90; Boutin v. Rudd, 82 Fed. 685, 27 C. C. A. 529.

There is nothing in the record to show, as contended, that Compton acted in any capacity except as general agent (which agency is admitted throughout) of the appellant company, and as such general agent booked the 1,000 bales of cotton for which the space was reserved, and failed to forward the cotton, thereby causing a loss, which he acknowledges in his letter of June 21st. In short, he made a plain contract, his part of which was not performed; thereby making his company liable for the loss which resulted.

The discussion of abstract questions of maritime law have no application. There is nothing in the record to support the contention that Compton acted as a common or joint agent to secure or procure cotton to be shipped for a joint profit, and if there was a shipper behind the Baltimore Steam-Packet Company, or Bay Line, for whom he was general agent,—and there is no suggestion that he acted other than within the scope of his agency,—the name of such shipper was not disclosed until afterwards. The oral argument and a careful examination of the record with appellant's brief fail to disclose any

reversible error. The decree of the district court is therefore affirmed.

GOFF, Circuit Judge, concurs in the affirmance of the decree appealed from.