## CENTRAL AMERICAN SHIPPING & TRADING CORPORATION v. MERCANTILE SHIP REPAIR CO., Inc.

### No. 18057.

District Court, E. D. New York.

Jan. 29, 1947.

Ramey & McKelvey, of New York City (Deane Ramey, of New New York City, of counsel), for cross-libelant, for the motion.

Nathan E. Zelby, of New York City (Herbert Burstein, of New York City, of counsel), for cross-respondent.

KENNEDY, District Judge.

On October 21, 1946, an order was entered directing Mercantile Ship Repair Co. Inc., the cross-respondent (hereafter called Mercantile), to furnish a bond under General Admiralty Rule 50, 28 U.S.C.A. following section 723, and referring the matter to a commissioner with directions that he take proof and report with respect to the amount and form of the bond to be furnished. The commissioner held hearings on November 4, 8, and 18, 1946. His report was filed on December 9, 1946. Central American Shipping & Trading Corp., the cross-libelant (hereafter called Central), now moves that the report be confirmed in part; Mercantile has filed exceptions to the report in its entirety.

The litigation began as a proceeding in rem by Mercantile to recover for repairs which it had performed on S. S. Guatemala. The cross-libel asserted by Central is in substance a claim for damages against Mercantile, because of delay in the making of the repairs and detention of the vessel. All kinds of motions have been made in the suit and many complications have arisen, among which I need make mention of only two: (1) Since the filing of the libel S. S. Guatemala has been sold and the proceeds deposited in the registry of the court, and (2) Mercantile has filed a petition under Chapter XI, 11 U.S.C.A. §§ 701–799, of the Bankruptcy Law and has, so far as its own assets are concerned, the status of a debtor in possession.

■ The right of Central to security is clear beyond any doubt. Nevertheless, Mercantile continues to argue, as it has from the start, that Central's claim, as such, is untenable. And the instant proceeding indicates that neither party to the proceeding has any very clear conception about the conduct of suits in admiralty.

■■ To support its exceptions to the commissioner's report, Mercantile argues at very great length that Central is really claiming under an oral modification of a written contract to repair, that the Personal Property Law of the State of New York, Consol. Laws, c. 41, sec. 33-c, invalidates oral modifications of executory agreements, and that under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, Central's claim is unenforceable. With equal gravity, and also at great length, Central argues that it bases its claim only upon an oral contract and that this superceded the original written contract. Of course, the fact is that the admiralty is not bound by any such statutes. Union Fish Co. v. Erickson, 1919, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261. And this is the very first time I have ever heard it even asserted that the Erie Railroad Co. case has the slightest bearing on suits in admiralty. The question of the interrelationship of the two contracts, if there really were two, is for the trial court to determine. Having asserted a claim cognizable in the admiralty, Central, like any other suitor, is entitled to protection under General Admiralty Rule 50, and all that was before the commissioner was the question of the amount and form of the security.

■ Both sides challenge the commissioner's findings that Central's claim should be secured by a bond in the usual form in the amount of $40,000. Mercantile says that Central did not prove its claim before the commissioner with certainty. But it was unnecessary for Central to do any such thing. The commissioner has found on the basis of evidence (which Mercantile did not choose to controvert) that Central had actually consummated an arrangement under which the ship, if ready, would have earned $20,000 a month. The commissioner thereupon concluded that the amount of the security should be $40,000, because two months was the minimum life of the arrangements which Central had entered into. Central complains about this, and criticizes the commissioner for not assuming that the contract would survive uncancelled. In other words, both parties have completely misunderstood the function of the commissioner, who was simply instructed to fix a reasonable amount of security and was not trying or deciding

the case. Apparently neither party is yet aware of the existence of General Admiralty Rule 43½. But even in the absence of such a rule, it would be necessary to confirm the report because all of the commissioner's findings are completely supported by the evidence before him.

There remains the question of the impact of Mercantile's petition for an arrangement upon the admiralty proceeding. There is no proof that Mercantile is insolvent. But, even if there were, it would be manifest injustice to permit an insolvent libelant to proceed in rem against a valuable property, and then to keep the security and still deprive the respondent of the protection of General Admiralty Rule 50, because of the libelant's own inability to furnish security. · This is the very technique that the rule was designed to prevent.

The report of the commissioner is in all respects confirmed. In the event that Mercantile is unable to furnish security, it can by amendment convert the proceeding into a suit in personam, and thus render the question of security academic. Settle order on notice.