**HELLENIC LINES LIMITED, Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION, Defendant-Appellee.**

No. 49, Docket 28885.

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1964.

Decided Jan. 12, 1965.

John F. Lang, New York City (Hill, Betts, Yamaoka, Freehill & Longcope, New York City, on the brief), for plaintiff-appellant.

Thomas M. Healy and Frederick L. Scofield, New York City (Robert J. Jackson, Philadelphia, Pa., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

■ In this action, tried to the jury, the parties stipulated to try first the issue of liability. At the close of the plaintiff-appellant's (Hellenic's) case, the court dismissed the complaint for failure to prove a prima facie case and directed a verdict for the defendant-appellee (Gulf) on its counter-claims. Under these circumstances we are bound, on review, to consider the evidence and any reasonable inferences which may be drawn from it in the light most favorable to Hellenic.

It appears that negotiations commenced in the early summer of 1958 between representatives of Hellenic, an ocean carrier, and of Gulf, a producer and seller of petroleum products, for a mutually advantageous business relationship. Hellenic was a substantial user of petroleum products, particularly of Bunker C fuel oil for its ships; and Gulf was a substantial shipper by sea. Hellenic's evidence could be held to show that as a result of these negotiations reciprocal collateral agreements were entered into by the parties. One was a written contract under the terms of which Hellenic agreed to buy and Gulf agreed to sell, between January 9, 1959, the date of the contract, and the end of the calendar year 1959, 150,000 barrels of fuel oil, ten per cent more or less, at rates set out in a price schedule and totalling $354,750. The other was an oral contract of affreightment under the terms of which Gulf agreed to ship and Hellenic agreed to carry, during the remainder of calendar 1959, cargoes in sufficient quantities to produce freights totalling $354,750. It could also have been found that each contract was entered into on condition and with the understanding that the

other contract would be entered into and become operative simultaneously.

In delivering to Gulf the written contract, fully executed by Hellenic, for the purchase and sale of fuel oil, Hellenic sent with it a letter specifically pointing out that it had signed the contract in reliance upon the existence of the collateral oral agreement pursuant to which Gulf would ship cargoes producing total freights equivalent to the value of the fuel purchased.[1] Gulf never disagreed with or took exception to the condition contained in this letter, and its reply implied approbation and accord.[2]

Between January 9, 1959 and April 9, 1959, Hellenic purchased fuel oil from Gulf at a total purchase price of $99,-025.30. Thereafter Gulf refused to supply Hellenic any more. During this period Gulf had not shipped any cargoes on Hellenic, and, for the balance of 1959, it shipped cargoes producing freights of only $4,258.81, even though Hellenic was at all times ready, willing and able to ship the quantities agreed upon.

Hellenic sued for breach of the affreightment contract. Gulf denied the existence of such an agreement. It asserted the fuel oil contract for 150,000 barrels of Bunker C oil and pleaded the

parol evidence rule and the Statute of Frauds to bar any evidence of any oral agreements which would affect the written fuel contract. It also counterclaimed for the $99,025.30 due to it for fuel delivered.

The trial court at the end of the plaintiff's case, concluded that the legal relations of the parties really constituted "a unilateral contract, imposing an obligation upon Hellenic only if Gulf ships freight aboard Hellenic Vessels." The court went on to say, "There is certainly no proof that this unilateral contract was breached by Gulf, since, of course, Hellenic purchased an amount of oil more than equal to the amount of shipments by Gulf."

In making this determination the trial court first decided that the letter of January 9, 1959 from Hellenic to Gulf, which accompanied the copies of the fuel oil contract which Hellenic had signed, was self-serving and inadmissible in evidence, that the parol evidence rule prevented Hellenic from showing that there was an oral contract collateral and reciprocal to the written fuel oil agreement and that "the so-called 'oral contract of affreightment' was not a maritime contract but one 'made on land, to be performed on land' " and that it, therefore,

1. Covering letter dated January 9, 1959 from Hellenic to Gulf:

"We are in due receipt of your letter of January 9th addressed to the writer, enclosing five copies of your marine fuel oil contract. We are pleased to return all five copies, duly signed by us, and request you to send back to us two originals, signed by you. We are, of course, signing these contracts on the strength of our agreement that you would ship cargo per our ships with freights corresponding to the value of the fuel we would be purchasing from you.

"As you know, our company is running the following services:

"1. From U. S. North Atlantic Ports to Mediterranean.
"2. From U. S. Gulf to Mediterranean.
"3. From U. S. Gulf and North Atlantic Ports to Alexandria as a direct call and thereafter to Red Sea Ports, Karachi, Bombay, Colombo, Calcutta, Chittagong and Chalna.

"4. From U. S. Gulf and North Atlantic Ports to the Persian Gulf.

"With a view to enabling us to take bunkers at Mena Al Ahmadi, we would suggest that you arrange to let us carry from here cargo for your installation at that place and while discharging same to replenish the respective ships' bunkers.

"Kindly acknowledge receipt of this letter.

"Trusting that this contract will mark the beginning of steady cooperation between our companies which will prove mutually advantageous, * * *."

2. Letter dated January 12, 1959 from Gulf to Hellenic:

"We wish to acknowledge receipt of five executed copies of our Marine Fuel Oil Contract for 1959. After we have processed this Contract we shall return two copies for your records, as requested.

"We have notified our Traffic Department of this and they will be glad to cooperate to our mutual advantage."

was invalid under the statute of frauds, § 33–c of the Personal Property Law of the State of New York, McKinney's Consol.Laws, c. 41. The trial court also, in the course of its decision, quoted portions of the testimony of Hellenic's general manager, Callimanopulos, and its traffic manager, Lee, which, in effect, said that Hellenic would buy from Gulf as much fuel and lubricants as Gulf would give freight to Hellenic. On the basis of this, the trial court found a fatal variance between the bilateral contract alleged in the complaint and what it called the unilateral contract shown by those portions of the evidence, and dismissed the complaint.

In reviewing the action taken below and the claims of the parties on appeal, we conclude that there was evidence to show the existence of two separate and enforceable contracts: one, the written contract for fuel oil and the other, the oral contract of affreightment and that they were collateral and reciprocal. They were both to become binding and operative at the same time and were to be performed approximately concurrently and over the same period of time, i. e., the remainder of the calendar year 1959. The making of each contract was the inducement for the making of the other.

Hellenic's covering letter of January 9, 1959 was competent evidence to show that the written fuel oil contract was, not intended to become operative unless and until the separate oral contract of affreightment also became operative. It was proof that, while the fuel contract and the affreightment contracts each had within themselves explicit terms and mutuality of consideration, and in that sense were separate agreements, there was not integrated into the written fuel contract the reciprocity with the collateral affreightment contract, which was the only circumstance under which it was to become operative. 4 Williston, Contracts, § 637 (3 ed. 1961).

The letter was improperly excluded. It was not self-serving; it was affirmative proof of the assertions contained in it and Gulf's reply could be found to imply concurrence or, to the extent it failed to respond to these assertions, under circumstances which reasonably called for a reply, could be found to constitute an admission by silence. Willard Helburn Inc. v. Spiewak, 180 F. 2d 480 (2d Cir. 1950); Wieder v. Lorenz, 164 Or. 10, 99 P.2d 38 (1940). As such it was entitled to whatever weight the jury might give it. Moreover, as Hellenic's covering letter and Gulf's reply or failure to reply afford proof that the written contract for fuel oil was not a complete statement of the agreement by the parties, in spite of its integration clause, the parol evidence rule does not apply. Lasky v. Rubel Corp., 303 N.Y. 69, 100 N.E.2d 140 (1951). 3 Corbin, Contracts, § 582, § 584, § 589 and § 594 (1960); and 4 Williston, Contracts, § 638 (3 ed. 1961). Such evidence is not admitted to vary or add to the terms of the written instrument, but to prove an oral agreement, supported by separate consideration, which is enforceable despite the existence of a collateral written agreement. Restatement, Contracts, § 240(1) (a) (1932). Nor does the parol evidence rule bar Callimanopulos' testimony about the negotiations leading up to the agreements between the parties and the terms of the agreements. In this connection it is noted that the part of Callimanopulos' testimony, on the basis of which the trial court found a variance and dismissed the complaint, is only a portion of the conversation at one stage of the negotiation. In addition to saying " * * * we would buy from them as much fuel and lubricants as they would give us freight," he also testified " * * they were prepared to contract with us on a reciprocal basis for 150,000 barrels of fuel 10% more or less * * * I told them this apparently corresponds to some $360,000 deal * * * the value of the fuel they were proposing and the freight," which if found true would clearly support the allegations of the complaint. There was other evidence which the jury was entitled to consider and this

**402**

entire factual area should have been left for its determination.

 The oral contract alleged does not come within the Statute of Frauds because the duration of the oral agreement was contemporaneous with the collateral written agreement and both were to be performed within one year—calendar 1959. The Statute of Frauds is inapplicable for another reason. As Judge Levet pointed out, an oral contract of affreightment creates rights under the maritime law which cannot be divested by a contrary state law. Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 26 (1919); Central American Shipping & Trading Corp. v. Mercantile Ship Repair Co., 73 F.Supp. 779 (E.D. N.Y.1947). The oral contract claimed to have been made here, involved something more than a mere agreement to place cargoes aboard Hellenic's vessels. It clearly contemplated carriage of the cargoes on the high seas. See Baltimore Steam-Packet Co. v. Patterson, 106 F. 736 (4th Cir. 1901).

"It is believed that a sure guide, in matters of contract, is to be found in the relation which the cause of action has to a ship, the great agents of maritime enterprise, and to the sea as a highway of commerce." 1 Benedict, Admiralty, § 64 (6th ed. 1940).

The contract in the present case was made on land to be performed at sea. Cf. People's Ferry Co. v. Beers, 20 How. 393, 61 U.S. 393, 15 L.Ed. 961 (1858).

 Since there was sufficient admissible evidence of an oral agreement, as alleged, the court below improperly dismissed the complaint for failure to make out a prima facie case. In the light of the disposition made, it is not necessary to discuss other questions raised in the appeal.

If a larger sum is shown to be due from Gulf to Hellenic than that found due from Hellenic to Gulf, further consideration will have to be given by the trial court to the matter of interest and costs; therefore, while the trial court's determination of the principal amount due from Hellenic to Gulf for oil is affirmed, the liability for interest and costs and their amounts will have to be adjudicated again. The case is reversed and remanded for a new trial.