William **GREENBLATT** et al., Plaintiffs,

v.

**PRESCRIPTION PLAN SERVICES CORPORATION, and Alvin Konigsberg and David Konigsberg, Individually, Defendants.**

William **GREENBLATT** et al., Plaintiffs,

v.

**NATIONAL HEALTH PLAN CORP., and Alvin Konigsberg, Individually, Defendants.**

Nos. 90 Civ. 2853 (SWK), 90 Civ. 4820 (SWK).

United States District Court, S.D. New York.

Feb. 19, 1992.

As Amended March 23, 1992.

Kennedy & Casey, P.C. by Stanley Q. Casey and Terrence P. Lamb, Garden City, for plaintiffs.

Roger A. Levy, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs bring these consolidated actions [1] for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Presently before the court are plaintiffs' motions, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, for an order granting them summary judgment upon their various ERISA and common law claims in each of the consolidated actions. The Court has subject matter jurisdiction over these actions pursuant to 29 U.S.C. § 1132(e)(1).

## BACKGROUND [2]

*The Parties*

Plaintiff Welfare Fund of the Plumbing Industry of New York (the "Welfare Fund" or "Fund") is a joint trusteed fund, established in 1954. Plaintiffs William Greenblatt and Peter N. Salzarulo are trustees and Chairman and Co–Chairman, respectively, of the Welfare Fund (the plaintiffs are referred to collectively as the "Trustees").

Defendant Prescription Plan Services ("PPS") is a corporation which manages and administers prescription drug programs with participating pharmacies. Defendant National Health Plan Corporation ("NHP") is a corporation which manages and administers dental health plans. Defendant Alvin Konigsberg is Chairman of

---

1. For ease of reference, the action entitled *Greenblatt v. Prescription Plan Services,* 90 Civ 2853 (SWK), shall be referred to as the "PPS Action," and the action entitled *Greenblatt v. National Health Plan Corp.,* 90 Civ 4820 (SWK), shall be referred to as the "NHP Action."

2. The following undisputed facts are taken from plaintiffs' Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 3(g).

the Board of both PPS and NHP, and defendant David Konigsberg is President of PPS.

*The PPS Contract*

In 1979, the Welfare Fund entered into a written agreement with PPS (the "PPS Contract") pursuant to which PPS would administer a drug program established by the Welfare Fund for the benefit of its eligible participants and their dependents, pensioners and spouses.

On March 23, 1989, David Konigsberg, PPS's president, requested that the Fund increase its cash reserve to $180,000. The Fund instead increased the reserve to $150,000.

On August 10, 1989, the Fund gave written notice to PPS of termination of the PPS Contract, providing the requisite 90 days advance notice of termination. The PPS Contract permitted PPS to use the cash reserve for obligations arising within 120 days after termination, and could have been used to satisfy claims arising between November 15, 1989, the Contract termination date, and March 15, 1990.

PPS, however, did not use the reserve to satisfy claims during the 120 period. Instead, it billed the Fund directly for services provided by panel pharmacies.

On January 15, 1990, the Fund's attorneys sent letters to PPS and Alvin Konigsberg demanding the return of the $150,000 cash reserve. PPS, through Alvin Konigsberg, responded that the demand was not in accordance with the provisions of the PPS Contract which permitted PPS to use the reserve to satisfy claims during the 120 day post-termination period. The Fund sent a further letter dated January 30, 1990, confirming a phone conversation between counsel in which PPS stated it would provide an accounting on or about March 15, 1990, and would return any unused portion of the reserve. To date, defendants have failed to provide an accounting or return any portion of the cash reserve.

*The NHP Contract*

In March 1988, the Welfare Fund entered into an agreement with defendant NHP pursuant to which NHP would administer a dental health plan on behalf of the Welfare Fund (the "NHP Contract"). To facilitate NHP's processing of plan participants' claims, the Fund authorized the Bank of New York to issue checks to NHP bearing the Fund's account number, enabling NHP to draw directly against the Fund's account. The Contract granted NHP no right to draw directly against the Fund's account but rather permitted NHP to do so as an accommodation and at the Fund's sole discretion.

On January 24, 1990, the Fund notified NHP of its termination of the NHP Contract, again providing the requisite 90–days advance notice. The NHP Contract was cancelled as of April 30, 1990. Defendants NHP and Alvin Konigsberg, however, continued to write checks directly against the Welfare Fund account, and refused to return unused checks until ordered to do so by this Court. Defendants based their refusal on industry custom and practice which, according to defendants, granted NHP a right to draw checks on the account for a period of one year after the Contract cancellation date. On June 20, 1990, this Court issued a Temporary Restraining Order (the "June 20th TRO") enjoining NHP and Alvin Konigsberg from writing and distributing checks against the Fund's account.

*The Parties' Claims*

In the PPS Action, the Trustees claim that defendants' failure and continuing refusal to return the $150,000 reserve to the Fund after the March 15, 1990 termination of the PPS Contract constitutes a breach of the PPS Contract and a breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, making defendants liable as fiduciaries under ERISA § 409, 29 U.S.C. § 1109. The Trustees seek $150,000 plus any interests and profits earned on that amount by defendants, an accounting of the cash reserve retained by the defendants and of all claims submitted to PPS by participating pharmacies from November 15, 1979 to date, an accounting of Alvin and David Konigsberg's bank accounts over the past five years, imposition of a constructive trust upon defendants, and appropriate in-

terest, costs, and disbursements incurred in the prosecution of this action together with reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g).

Defendants raise no affirmative defenses or counterclaims to the Trustees' claims but argue that they are nevertheless entitled to retain possession of the cash reserve as a potential offset against their counterclaim in the NHP Action.

In the NHP Action, the Trustees claim that NHP and Alvin Konigsberg violated their fiduciary duties under ERISA by continuing to write checks against the Fund's account and refusing to return unused checks after the termination of the NHP contract. Defendants contend that their actions were justified by industry custom, and that such custom and practice is an implicit part of the parties' contract. Plaintiffs seek a permanent injunction enjoining NHP and Alvin Konigsberg from writing additional checks against the Fund's account, an award of any increased administrative costs incurred by the Welfare Fund resulting from defendants' conduct, an accounting of all checks written by NHP on the Fund's account after the cancellation of the NHP Contract, and reasonable attorneys's fees and costs pursuant to ERISA §§ 409 and 502(g)(1), 29 U.S.C. §§ 1109 and 1132(g)(1).

In the NHP Action defendants assert two counterclaims. The first alleges misappropriation of proprietary information, and is premised upon allegations that NHP created a list of specially selected dentists for use in administering the Fund's dental program in which it has a proprietary interest and which the Fund wrongfully misappropriated. The second alleges injury to defendants' business and reputation stemming from the Fund's obtaining from this Court the June 20th TRO. Defendants allege that the injunction prevented defendants from paying properly pre-authorized

dental claims, causing injury to their business and reputation. Defendants seek $200,000 on the first counterclaim and $1,000,000 on the second counterclaim.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[3] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary

---

**3.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether

the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

## II. The PPS Action

ERISA Section 409 provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of such assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . .

29 U.S.C. § 1109(a). To succeed on a claim under Section 1109, plaintiffs must establish that defendants are ERISA fiduciaries with respect to the Fund, and that defendants breached their fiduciary duties.

### A. *Defendants' Fiduciary Status*

■ ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or* exercises any authority or control respecting management or disposition of its assets. . . ." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added). ERISA's definition of "fiduciary" emphasizes "the exercise, as well as the possession, of authority or control." *Blatt v. Marshall and Lassman*, 812 F.2d 810, 813 (2d Cir.1987). One who exercises actual control over disposition of assets is a fiduciary under ERISA; one who engages in purely "ministerial" functions is not. *Id.* at 812, 813.

Courts have generally applied a liberal interpretation to "fiduciary" within the ERISA context, since "[a]pplying a restrictive judicial gloss to the term 'fiduciary' would, in effect, enable trustees to transfer important responsibilities to a largely immunized 'administrative' entity. A clear congressional desire to expand the scope of fiduciary standards of conduct should not be so undermined." *Lowen v. Tower Asset Management, Inc.*, 653 F.Supp. 1542, 1550 (S.D.N.Y.) (quoting *Eaton v. D'Amato*, 581 F.Supp. 743, 746 (D.D.C.1980), *aff'd*, 829 F.2d 1209 (2d Cir.1987)).

### 1. PPS

■ Plaintiffs have met their burden of demonstrating that PPS is a fiduciary within the meaning of ERISA.[4]

First, PPS's obligations under the PPS Contract are sufficient to establish PPS as an ERISA fiduciary. In *Sixty–Five Sec. Plan v. Blue Cross and Blue Shield*, 583 F.Supp. 380, 387 (S.D.N.Y.1984), this Court held that the design and implementation of claims processing systems was not a purely ministerial function, and that broad latitude in performing administrative tasks was sufficient to establish fiduciary status under ERISA. *See also Eaton v. D'Amato*, 581 F.Supp. at 743 (corporation administering employee benefit plans which made critical management and administrative decisions and established recordkeeping systems was ERISA fiduciary). The PPS Contract calls for PPS to "manage and administer" a drug program on behalf of the Fund, issue "Identification Enrollment" cards to eligible Fund participants, verify eligibility of card holders in accordance with lists of eligible participants provided by the Fund, pay the prescription cost of drugs falling within certain categories, maintain a "Central Pharmacy" for the use of Fund members with chronic ailments, process all claims and verify that the filled prescriptions fall within the scope of the program, verify the price computation of each prescription, design and supply all forms for the program, and submit a

---

**4.** Under ERISA, the term "person" includes, but is not limited to, individuals, corporations, partnerships, joint ventures, and unincorporated associations. *See* 29 U.S.C. § 1002(9). PPS therefore qualifies as a "person" who may be "a fiduciary with respect to a plan," for purposes of ERISA Section 409, 29 U.S.C. § 1109.

monthly statement of charges to the Fund. Although PPS's duties necessarily involved responsibility over ordinary, day-to-day activities, PPS was also given broad discretion in implementing information-gathering and claims processing systems for the plan. Such activities are not purely ministerial, and therefore qualify PPS as a fiduciary. *See Sixty–Five Sec. Plan,* 583 F.Supp. at 387.

■ Second, PPS's actual control over the cash reserve is also highly probative of its fiduciary status. Defendants do not contest the complaint's allegations concerning PPS's refusal to return the cash reserve after the PPS Contract's 120–day post-termination period, or their contractual obligation to return the reserve.[5] PPS's refusal to return the $150,000 cash reserve and its ability to retain possession of the reserve despite its clear post-termination obligation under the Contract demonstrates PPS's actual control over the disposition of Fund assets. Such actual control is sufficient to establish PPS's fiduciary status. *See Blatt v. Marshall and Lassman,* 812 F.2d 810, 813 (2d Cir.1987) (rejecting argument that a party with actual authority or control but without grant of discretion cannot be ERISA fiduciary); *Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988) (under § 1002(21), a fiduciary includes person who exercises actual authority or control respecting management or disposition of plan assets, whether or not person has authorization to do so); *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984) (same).

## 2. Alvin and David Konigsberg

■ The Trustees also have met their burden of demonstrating an absence of material fact as to Alvin and David Konigsberg's status as individual ERISA fiduciaries. In analyzing alleged breaches of fiduciary obligations under ERISA, courts attach no overriding importance to the corporate form; indeed, "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would be un-

dermined." *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220 (2d Cir.1987); *see Alman v. Danin,* 801 F.2d 1, 3 (1st Cir.1986) ("deferring too readily to the corporate identity may run contrary to the explicit provisions of the Act"). Courts have thus accorded individuals fiduciary status where an individual "personally and actively controlled and dominated [a corporation]" involved in investing and managing plan funds. *Lowen,* 829 F.2d at 1221. Moreover, ERISA equates fiduciary responsibility with an individual's actual authority or control. *See Blatt,* 812 F.2d at 813.

The uncontroverted evidence of the Konigsbergs' plan-related activities demonstrates management control and discretionary authority over plan assets sufficient to warrant a finding that both individuals are ERISA fiduciaries subject to the operation of Section 1109(a). Alvin Konigsberg contests neither that his failure to cause PPS to return the cash reserve during the 120 day post-termination period was inappropriate under the PPS Contract, nor that the reserve was not being used to satisfy client claims during this period. Similarly, defendants do not contest that PPS *and* Alvin Konigsberg withheld the reserve and that it was David Konigsberg who requested that the Fund increase the cash reserve to $180,000.

Moreover, in connection with his counterclaims in the NHP Action, Alvin Konigsberg candidly admits his domination and control over PPS (and NHP) and requests that the Court deem him the alter ego of his corporation such that he may claim the corporation's injury as his own:

> As the Court is aware, I am in the business of administering medical, dental and drug benefit plans for union welfare funds. I conduct this business primarily through two corporate vehicles, PPS and NHP
>
> Those two corporations share a great many resources. Not only is office space and equipment shared, so are intangible

---

5. Since defendants do not dispute these statements, they are deemed admitted in accordance with Local Civil Rule 3(g). The admissions are binding both on the parties and on the Court. *PPX Enterprises, Inc. v. Audiofidelity, Inc.,* 746 F.2d 120, 123 (2d Cir.1984).

assets such as client lists, medical panels and dental panels. This results in a substantial identity of purpose between PPS and NHP.

The fact is, as far as everyone with whom I do business is concerned, I am PPS, and I am NHP.... I am the one who negotiates agreements. I am the one the funds, pharmacies and doctors I work with turn to for solutions to problems.... The fact is, if PPS lets clients down, for any reason, the people in my field regard that as my letting clients down....

And when my reputation suffers, every corporation I operate suffers, because there is a substantial identity between myself individually and my corporations....

I understand that ERISA [according to the Court] allows the plaintiffs to make their claims against me personally, but again, it really underscores the fact that for many business purposes, I am PPS and NHP, and they are me.

Affidavit of Alvin S. Konigsberg, sworn to May 6, 1991 ("Konigsberg Aff."), at ¶¶ 2–8. These statements by Alvin Konigsberg, acknowledging his domination and control over PPS and NHP to the extent that there is a substantial identity between he and his corporations, together with the uncontradicted facts set forth above, establish sufficient actual management or control to establish David and Alvin Konigsberg as individual Fund fiduciaries under ERISA.

### B. *Breach of Fiduciary Duty*

Plaintiffs set forth uncontested facts establishing that defendants have breached their fiduciary duties under ERISA. Under ERISA § 404, a fiduciary

shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan.... (D) in accordance with the documents and instruments governing the plan....

29 U.S.C. § 1104. The PPS Contract states that the cash reserve was to be used for payment of obligations of the Fund to PPS which obligations arise from claims for payment submitted by panel pharmacies for services rendered for the month preceding and these payments are charged to the fund [in accordance with contractual monthly reporting procedures] and/or arising after the termination of this agreement for a period of 120 days thereafter. In the event that obligations hereinunder are less than the said $30,000 [cash reserve], the difference shall be paid to the Fund.

PPS Contract, PPS Action Complaint Exhibit "A," at ¶ 14. Defendants dispute neither the existence of the $150,000 cash reserve, receipt of proper notice of termination of the Contract, or that PPS was under a contractual obligation to return any unused potion of the reserve at the end of the post-termination period. Nor do defendants dispute that they retained the $150,000 during the 120 day post-termination period, the reserve was not used at any time to satisfy obligations for payments submitted by panel pharmacies during the post-termination period, PPS billed the Fund directly during the post-termination period, and PPS, through Alvin Konigsberg, refused to return the $150,000 to the Fund. Moreover, defendants have proffered no explanation as to how PPS's direct billing of the Fund during the post-termination period while refusing to surrender the cash reserve would produce any benefit for the plan participants and beneficiaries or defray reasonable expenses of administering the plan.

■ PPS's failure, at the direction of the Konigsbergs, to return the reserve constitutes a breach of the clear language of the Contract. Accordingly, PPS's unlawful retention of the cash reserve in breach of the Contract establishes defendants' failure to discharge their fiduciary duties "solely in the interest of the [Fund] participants and beneficiaries" and "in accordance with the documents and instruments governing the plan" as required by ERISA. *See* 29 U.S.C. § 1104(a)(1)(D).

### C. Breach of Contract

ERISA Section 514(a), 29 U.S.C. § 1144(a), states in relevant part that "the provisions of this title ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)]...." Therefore, "[i]f a state law 'relate[s]' to ... employee benefit plan[s], then it is preempted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). Such preemption extends to common law causes of action relating to employee benefit plans. *Id.* at 47, 107 S.Ct. at 1553.

Notwithstanding the uncontroverted evidence establishing plaintiffs' common law contract claim (the Fund's second claim against PPS), that claim arises under state law and "relates" to the employee benefit plan, and so is preempted by ERISA.

### D. Defendants' Counterclaim

Defendants' sole defense to plaintiffs' claim as to the $150,000 reserve is that defendants may properly retain the reserve as an offset against their misappropriation counterclaim in the NHP Action. Defendants argue that such counterclaim creates a genuine issue of material fact as to whether the cash reserve was wrongfully withheld from the plaintiffs.

The PPS Contract, however, provides no basis for defendants to withhold the cash reserve as a fund from which they might recover a judgment rendered on their counterclaim. The Contract expressly and unambiguously provides that the reserve shall be used to satisfy "claims for payment submitted by panel pharmacies for services rendered." The PPS Contract refers to no other kind of "claim" which the reserve shall be used to satisfy, and thus provides no basis for defendants to retain the cash reserve.

Nor is defendants' attempt to use the misappropriation counterclaim in the NHP Action to defeat plaintiffs' motion for summary judgment grounded in law. Under Rule 56 of the Federal Rules of Civil Procedure, where a counterclaim presents an independent, unliquidated claim and presents no issue of fact as to the plaintiff's claim, "the entry of summary judgment on plaintiff's claim is not only proper but is required." *Allis–Chalmers Corp. v. Philadelphia Electric Co.*, 64 F.R.D. 135, 140 (E.D.Pa.1974) (citation omitted), *appeal dismissed, remanded*, 521 F.2d 360 (3d Cir. 1975) ("In times of tight money ... the ingenuity of debtors in devising reasons for not paying liquidated indebtedness is limited only by the willingness of the courts to countenance delaying tactics.") (Gibbons, J., dissenting); *see Omark Industries, Inc. v. Lubanko Tool Co., Inc.*, 266 F.2d 540, 541 (2d Cir.1959) (rejecting argument that counterclaim involving no element essential to establishment of plaintiff's claim may serve to defeat summary judgment on plaintiff's claim). Essential in this analysis is

> not the term used to describe defendant's counterclaim, but whether that claim is a separate and independent cause of action and whether it is so closely related to the claim on which summary judgment is sought that an issue of fact in one may prove to be important to both.

*Id.* at 139–40. *See also Curtis Publishing Co. v. Church, Rickards & Co., Inc.*, 58 F.R.D. 594, 595–96 (E.D.Pa.1973) (counterclaim creates no defense for failing to remit to plaintiff moneys they were not entitled to retain under parties' agreement).

Assuming a viable counterclaim against plaintiffs in the NHP Action based upon misappropriation of proprietary information, such a claim fails to justify defendants' continued retention of the cash reserve as a fund against which they may withdraw a possible judgment. The misappropriation counterclaim raises no issue of fact material to a determination of plaintiffs' entitlement to the cash reserve. Although plaintiffs' claim and defendants' counterclaim may be said to relate to the PPS Contract, the counterclaim is separate and distinct from plaintiffs' claim to the cash reserve, having no identity of elements of proof. The Court thus concludes that the existence of the misappropriation counterclaim does not serve to defeat plain-

tiffs' motion for summary judgment in the PPS Action.

## III. The NHP Action

### A. *Defendants' Fiduciary Status*

#### 1. NHP

◼ The NHP Contract required NHP, among other things, to pay and process benefit claims, maintain a file for each covered person, design and administer forms for the claims procedure, administer a pre-authorization program, administer the coordination of benefits, provide, maintain and supervise a panel of dentists for use by plan members and their families on a voluntary basis, maintain records for compliance with IRS regulations and ERISA, accumulate statistics and provide an annual report to the Fund, and provide recommendations for changes to the dental plan. In short, NHP was responsible for "designing, implementing, and administering" a system for managing the plan. *Sixty–Five Sec. Plan,* 583 F.Supp. at 388. This broad latitude in performing administrative tasks is sufficient to establish NHP as a fiduciary under ERISA. *See id.* at 387.

Additionally, it is undisputed that the Fund authorized the Bank of New York to provide checks to NHP so that NHP could draw directly against the Fund's account. After termination of the NHP Contract, NHP refused the Fund's request to return all unused checks and continued to write checks against the Fund's account. NHP's actual control over the Fund's checking account establishes "control respecting management or disposition of plan assets," sufficient to establish fiduciary status under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *See Blatt,* 812 F.2d at 813.

#### 2. Alvin Konigsberg

◼ Alvin Konigsberg is also an ERISA fiduciary for the dental plan. He has admitted primary responsibility for the functioning of NHP and permitting NHP to continue to write checks after termination of the NHP Contract, claiming that industry custom and practice justified his conduct. Alvin Konigsberg, therefore, possessed the necessary control over NHP and exercised sufficient decision-making authority with respect to the checkbook issued by the Fund to NHP to establish him as an ERISA fiduciary.

### B. *Breach of Fiduciary Duty*

◼ As in the PPS Action, defendants' undisputed failure to terminate the NHP Contract in accordance with its terms establishes breach of their fiduciary duty to plaintiffs. Defendants admit that plaintiffs had sole discretion over the checkbook, the checks were provided to NHP solely as an accommodation, and nothing in the NHP Contract authorized use of the Fund's checks after the Contract's termination. That the Fund decided to supply checks as an accommodation to NHP granted NHP no additional rights under the NHP Contract. Defendants' failure and refusal to return unused checks to the Fund after termination of the NHP Contract, together with their continued issuance of drafts against the Fund account—contrary to express instructions from the Fund—conclusively establish defendants' failure to discharge their duties "solely in the interest of the [plan] participants and beneficiaries," and so constitute a violation of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104.

◼ Defendants' contention that industry custom and practice allowed them to write checks directly against the Fund's account in derogation of the NHP Contract is without merit. Under New York law, where, as here, a contract clearly sets forth the rights and obligations of both parties—in this case payment obligations—evidence of industry practice may not be used to vary the terms of the contract. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985); *Croce v. Kurnit,* 737 F.2d 229, 238 (2d Cir.1984); *Western Union Tel. Co. v. American Communications Ass'n, C.I.O.,* 299 N.Y. 177, 184–85, 86 N.E.2d 162, 166 (1949). Accordingly, as plaintiffs have met their burden of establishing a violation of fiduciary duty under ERISA and defendants have failed to present evidence creating a genuine issue

of material fact requiring trial, plaintiffs are entitled to judgment as a matter of law.

### C. Counterclaims

#### 1. Misappropriation of Proprietary Information

■■ Plaintiffs also move for summary judgment dismissing defendants' counterclaims. The first counterclaim alleges that the Fund misappropriated a list of dentists in which defendants have a proprietary interest, entitling defendants to money damages. Defendants allege that NHP created a panel of specially selected dentists in the course of administering a dental plan for the Fund, and that NHP expended substantial time and resources in creating such a panel. NHP alleges that it has a proprietary interest in the integrity and confidentiality of the list of dentists on the panel. Defendants also allege that the list is the sensitive and confidential property of NHP, and that the plaintiffs wrongfully used the dental panel list in a manner that infringed upon NHP's proprietary interest in the list.[6]

Although the nature of the counterclaim is not entirely clear, neither the allegations of the counterclaim nor the record supports an actionable claim for either unfair competition, misappropriation of a trade secret, or any other tortious interference with a proprietary right recognized under New York law.

#### a. Unfair Competition

■■ Defendants' counterclaim does not state a claim of unfair competition under New York law since it fails to allege either how plaintiffs profited from the alleged misappropriation of the list of dentists, or how the list was improperly acquired by the plaintiffs. The New York law of unfair competition is extremely broad, banning "any form of commercial immorality." *Metropolitan Opera Ass'n. v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 796, 101 N.Y.S.2d 483, 492 (N.Y.Sup.Ct.1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dept.1951). A claim of unfair competition, however, requires allegations of "unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor, and talent." *Roy Export Co. v. Columbia Broadcasting System, Inc.*, 503 F.Supp. 1137, 1151–52 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). In addition, an allegation of injury alone is inadequate to make out a claim for unfair competition; instead, the damage must have been inflicted "by some unfair or improper means [as] [t]he essence of the tort is the effort to misappropriate the fruits of another's efforts." *Copy–Data v. Toshiba America, Inc.*, 582 F.Supp. 231, 234 (S.D.N.Y.1984), *rev'd on other grounds*, 755 F.2d 293 (2d Cir.1985), *cert. denied*, 474 U.S. 825, 106 S.Ct. 80, 88 L.Ed.2d 66 (1985).

Viewed as an unfair competition counterclaim, defendants' counterclaim fails. Assuming *arguendo* the sufficiency of the counterclaim's allegations, the record is void of evidence supporting the allegations that plaintiffs wrongfully appropriated and attempted to profit from the wrongful appropriation of the list of dentists on NHP's panel.

■■ First, defendants fail to establish that plaintiffs appropriated a list of panel dentists. Neither NHP nor Alvin Konigsberg dispute that plaintiffs never possessed such a list, thereby fatally undermining the "appropriation" element of their purported claim; indeed, defendants do not claim that plaintiffs obtained any list directly from NHP, but instead suggest that "[t]he plaintiffs were well able to discern the identities of our dental panel from claims forms and correspondence." Konigsberg Aff. at ¶ 12. Such an alleged "appropriation" of information will not support a claim of unfair competition, since obtaining information possessed by another does not by itself create an actionable claim under New York law. *See Levine v. Bochner*, 132 A.D.2d 532, 533, 517 N.Y.S.2d 270, 271–72 (2d

---

6. Defendants fail to state or explain the theory on which its request for relief is based, and neither defendants' pleadings nor their memorandum of law contains reference to a source of law supporting the counterclaim.

Dept.1987) (insurance broker's use of information concerning clients of a former employer does not constitute misappropriation where the information could be obtained by any agent reviewing the clients' policies); *Zurich Depository Corp. v. Gilenson*, 121 A.D.2d 443, 445, 503 N.Y.S.2d 415, 417 (2d Dept.1986) (use of information concerning a former employer's customer list which is based on casual memory is not actionable). Moreover, not only do defendants fail to establish that plaintiffs appropriated a list of dentists, defendants fail to proffer evidence that such a list ever existed, as no such purported list is part of the record in this case. Defendants failure to proffer evidence of a list or its misappropriation therefore establishes defendants failure to establish appropriation by "unfair or improper means." *See Copy–Data v. Toshiba America, Inc.*, 582 F.Supp. at 234.

Second, defendants neither proffer evidence of profits realized directly in connection with the list (the Fund is not a healthcare provider), nor allege that plaintiffs disclosed the contents of any such list to another healthcare provider, nor explain how plaintiffs would profit from such disclosure. In sum, defendants proffer no evidence of wrongful activity that might be the basis of an unfair competition claim.

### b. Trade Secrets

■ Defendants' allegations are similarly insufficient to support a claim for misappropriation of trade secrets. Under New York law, a claim based on misappropriation of trade secrets requires (1) a confidential relationship between the parties, (2) disclosure of what amounts to a trade secret from one party to the other, and (3) use of the information by the party receiving the disclosure. *Heyman v. AR. Winarick, Inc.*, 325 F.2d 584, 586 (2nd Cir. 1963); *Sublime Products, Inc. v. Gerber Products, Inc.*, 579 F.Supp. 248, 251 (S.D.N.Y.1984). As set forth above, defendants have presented no evidence concerning the misappropriation and use of the panel list. This failure is fatal to defendants' claim.

Moreover, beyond defendants' bald allegations of confidentiality, there is no evidence of a relation of trust with respect to alleged confidential information or that defendants made reasonable efforts to protect the security of the list and did not disclose the confidential material themselves. *See Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1063 (2d Cir.1985), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985) (if owner of trade secret discloses secret, even inadvertently or accidentally, or if the owner fails to take reasonable precautions to protect the information, information loses the protection of trade secret law).

■ Defendants admit that plaintiffs could have easily discerned the identities of the dentists on NHP's panel from claims forms and correspondence. In addition, the NHP Contract contains no provision precluding plaintiffs' or Fund participants' use of information concerning NHP's panel of dentists. Thus, under New York law, defendants' counterclaim fails as a claim based upon wrongful misappropriation of a trade secret.

Accordingly, as defendant's have failed to adduce evidence sufficient to establish a *prima facie* claim based upon misappropriation of proprietary information, plaintiff's motion for summary judgment dismissing the first counterclaim is granted.

### 2. Injury to Business and Reputation

The second counterclaim alleges that plaintiffs' acquisition of the June 20th TRO (enjoining defendants from writing checks against the Fund's account) prevented defendants from paying claims that had been properly pre-authorized according to the NHP Contract prior to its termination, resulting in injury to defendants' business and reputation. Defendants also allege that plaintiffs' stoppage of payment on checks drawn against the account had similar results.

This counterclaim, like the first counterclaim, is without foundation in law. In granting the June 20th TRO, this Court determined that plaintiffs had established a strong likelihood of success on the merits

of their ERISA claim, as well as the other elements establishing their entitlement to injunctive relief. The TRO itself compelled the defendants to forward any present or future claims by Fund participants to the Fund's administrator for payment. Defendants have proffered no evidence that the Fund has failed to satisfy any outstanding claims for pre-authorized procedures. Additionally, defendants admit that the checkbook was within plaintiffs' sole discretion, yet refused to return the checks at the Fund's request. These factors conclusively establish that any harm inuring to defendants in connection with the issuance of the June 20th TRO resulted from their own unlawful conduct. Consequently, defendants' fail to establish injury to business or reputation as a matter of law. Accordingly, plaintiffs' motion for summary judgment dismissing the second counterclaim is granted.

## IV. Remedies

### A. *The PPS Action*

ERISA confers broad remedial powers upon the courts. *See Schoenholtz v. Doniger,* 657 F.Supp. 899, 902 (S.D.N.Y. 1987). ERISA Section 409 provides in part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of such assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate....

29 U.S.C. § 1109(a).

In the PPS Action, defendants may clearly be made to respond in money damages for the $150,000 cash reserve wrongfully retained, including pre-judgment interest from March 15, 1990. Although Section 409 permits the Court to award plaintiffs any profits made by defendants through their wrongful use of the cash reserve, plaintiffs have neither alleged the existence of any such profits, nor presented any evidence on the issue. Under the circumstances, an award of profits would therefore be inappropriate. Additionally, since the $150,000 in dispute is presently being held in escrow by defendants' attorney in an interest-bearing account, an accounting would serve no purpose and so would be inappropriate under the circumstances.

### B. *The NHP Action*

Based upon the Court's finding that defendants breached their fiduciary duty to plaintiffs in connection with their wrongful use of the Fund's checking account, plaintiffs are entitled to a permanent injunction against defendants' use of checks bearing the Fund's account number.

Plaintiffs are also entitled to recover any increased administrative costs incurred by the Fund that resulted from defendants' wrongful use of the Fund checkbook. *See Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir.1985).

Finally, to the extent necessary to assess damages in connection with defendants' use of the Fund's checkbook, plaintiffs shall be entitled to an accounting of the checks issued by NHP and Alvin Konigsberg against the Fund's account.

### Attorney's Fees Under ERISA

ERISA § 502(g), 29 U.S.C. § 1132(g) sanctions an award of reasonable attorney's fees and costs in an ERISA action.[7] District courts have broad discretion in this area, and may grant such an award in whole or in part. *See American Communications Ass'n v. Retirement Plan for Employees of RCA Corp.,* 507 F.Supp. 922, 923 (S.D.N.Y.1981). Under the standard set by the Court of Appeals for this Circuit, five factors are ordinarily con-

---

7. ERISA Section 502(g) provides in pertinent part:

> In any action under this title ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party. 29 U.S.C. § 1132(g).

sidered in determining whether to award attorney's fees under ERISA:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending parties to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons acting similarly under similar circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit on a group of pension plan participants.

*Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Iron Workers Local #272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). Finally, attorney's fees may be awarded to the prevailing party in an ERISA action if there is no particular justification for not doing so. *Birmingham v. SoGen–Swiss International Corp. Retirement Plan,* 718 F.2d 515, 523 (2d Cir.1983).

▮ Applying these factors to the present case, the Court finds that plaintiffs are entitled to reasonable attorneys fees and costs in both actions. Defendants in each action were highly culpable in breaching their fiduciary obligations and have failed to offer cogent justification for their conduct. In addition, the respective merits of the parties' positions are not comparable. Abuse of authority and control over plan assets should be strongly discouraged, and if defendants "face the prospect of paying attorneys' fees for successful plaintiffs, they will have added incentive to comply with ERISA." *Schoenholtz,* 657 F.Supp. at 911 (quoting *Carpenters Southern California Administration Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984)). In addition, as this action was brought to benefit Fund beneficiaries as a group, the strong policy consideration of ensuring the ability of the Fund to properly manage its resources so as to benefit all plan partici-

pants further supports an award of attorneys' fees under the circumstances. Given the weight of several factors in this case, and the absence of any reason to the contrary, this Court finds that an award of reasonable attorney's fees and costs should issue in favor of the plaintiffs.

## V. Rule 11 Sanctions

▮ Plaintiffs also move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides in relevant part:

> [e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney ... constitutes that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well founded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

Under Rule 11, an award of sanctions should not be based upon a subjective determination of bad faith, but instead should depend on whether "a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986); *Eastway Constr. Corp v. New York,* 762 F.2d 243, 254 (2d Cir.1985). In considering sanctions, the court should "resolve all doubts in favor of the signer" of the paper in question, *Oliveri,* 803 F.2d at 1275, and should grant sanctions only "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the

law as it stands," *Eastway*, 762 F.2d at 254. Finally, the district courts have wide discretion for determining lack of actual basis or improper motivation for an attorney's actions. *Quadrozzi v. New York*, 127 F.R.D. 63, 80 (S.D.N.Y.1989).

The Court finds that Rule 11 sanctions are appropriate in this instance. One purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469 (2d Cir.1988) (quoting Advisory Committee note to 1983 amendment), *rev'd in part, Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). Sanctions have been imposed where a party fails to cite a single case or authority supporting a motion and disregards established precedents contrary to that party's position, since such action indicates that a reasonable investigation has not been made. *National Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F.Supp. 339, 341–42 (S.D.N.Y.1985).

■■■ Resolving all reasonable doubts in favor of defendants' counsel, it is clear to this Court that, based upon the record and proceedings in this action, the counterclaims in the NHP Action are patently frivolous, without basis in law or fact, and were the focus of a strategy to delay the resolution of these actions at any cost. Defendants in the PPS Action submitted no colorable opposition to the merits of plaintiffs' motion for summary judgment, and, in fact, conceded the majority of material facts establishing plaintiffs' claim; they urged denial of plaintiffs' motion, however, based upon the unsupported theory that an alleged counterclaim in the NHP Action—raising no issue of law or fact relating to plaintiffs' ERISA claim—is sufficient to defeat plaintiffs' motion for summary judgment on that claim. In urging this position, defendants neither refer the Court to a single authority nor present any argument supporting extension of existing precedent, and ignore applicable precedent to the contrary. *See, e.g., Omark Indus-*

*tries, Inc. v. Lubanko Tool Co., Inc.*, 266 F.2d 540, 541 (2d Cir.1959).

Moreover, the counterclaims themselves have no colorable basis in law. Defendants fail to cite a single case supporting a right to recover under either counterclaim, demonstrating that a reasonable investigation was not conducted as to the viability of the counterclaims. The Court concludes that defendants' opposition to the motion was interposed solely as a dilatory tactic to delay entry of judgment against them. Consistent with Rule 11, the Court will not countenance such patent abuse of the judicial process.

■■■ When a violation of Rule 11 has been found, the Court "should direct sanctions at whoever is responsible for the filing of the frivolous paper." *Eastway Constr. Corp. v. New York*, 637 F.Supp. 558, 569 (E.D.N.Y.1986), *modified on appeal*, 821 F.2d 121 (2d Cir.1987). Although while "[i]n practice, assessment of fault between attorney and client is rather difficult," *id.*, the appearance of a party's signature on papers submitted to the Court "denotes merit . . . [and] sends a message to the district court that the document is to be taken seriously." *Business Guides v. Chromatic Communications Enter., Inc.*, —— U.S. ——, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991). Thus, "[w]here a represented party appends its signature to a document that a reasonable inquiry into the facts would have revealed to be without merit, . . . a District Court may sanction the party in addition to, or instead of, the attorney." *Id.* (citation omitted).

■■■ Although it is defendants' attorney who failed to conduct a reasonable investigation into the legal or factual bases for the counterclaims, it is clear that Alvin S. Konigsberg shares with his attorney the responsibility for engineering defendants' dilatory strategy. In his sworn affidavit, Konigsberg himself avers the purported facts entitling the counterclaimants to recovery, and propounds the frivolous argument, also urged by counsel, that the pendency of the NHP Action counterclaims are sufficient to defeat summary judgment in the PPS Action. Accordingly, the Court

finds that imposition of a sanction jointly and severally upon defendants' attorney and Alvin Konigsberg in the amount of $2,500, payable to the Clerk of the Court, is appropriate to address the conduct in this case and deter such activities in the future. The $2,500 amount is well within the parameters established by Rule 11 sanctions imposed under similar circumstances in this district. *See, e.g., Summit Tax Exempt L.P. II v. Berman*, 1989 WL 152796, 1989 U.S. Dist. LEXIS 8312 (S.D.N.Y.1989) (imposing Rule 11 sanctions of $2,500 for frivolous counterclaim); *First City Federal Savings Bank v. Dennis*, 128 F.R.D. 180, 182 (S.D.N.Y.1989) (imposing Rule 11 sanctions of $4,000 for interposing an unfounded defense and for misleading the Court); *Burger v. Health Ins. Plan*, 684 F.Supp. 46, 53–56 (S.D.N.Y.1988) (imposing Rule 11 sanction of $2,500 payable to Clerk of the Court for violations of procedural rule for motion practice and for presenting as evidence attorney's affidavit not based on personal knowledge).

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment upon their claim for breach of fiduciary duty in the PPS Action, 90 Civ. 2853, is granted against PPS, Alvin Konigsberg, and David Konigsberg, upon the First Cause of Action Against PPS, the Second Cause of Action against Alvin S. Konigsberg, and the Second Cause of Action against David Konigsberg, respectively. Plaintiffs shall recover the $150,000 cash reserve plus interest from March 15, 1989, together with increased administrative costs (if any), attorney's fees and costs in an amount to be determined upon such proof as plaintiffs may submit within 60 days from the date of this order. Defendants shall forthwith cause the $150,000 cash reserve to be delivered to plaintiffs.

Plaintiffs' motion for summary judgment in the NHP Action, 90 Civ. 4820, is also granted against NHP and Alvin Konigsberg, and defendants counterclaims are hereby dismissed with prejudice. Defendants are permanently enjoined from writing or distributing any checks against the Welfare Fund account, and shall be liable for such increased administrative costs (if any) incurred by the Fund as a result of defendants' conduct, together with attorney's fees and costs in an amount to be determined upon such proof as plaintiffs may submit within 60 days from the date of this order.

Plaintiffs' motion for Rule 11 sanctions is granted, and the Court hereby imposes a sanction of $2,500 jointly and severally upon attorney Roger A. Levy and Alvin S. Konigsberg, payable to the Clerk of the Court within ten days from the date of this order. The Clerk is hereby directed to enter judgment in accordance herewith, there being no just reason for delay.

SO ORDERED.