NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND, through Its Trustees; J. Dawson Cunningham, Anthony R. Simoes, Daniel W. Schmidt, Thomas K. Wotring, Frank Posato, John Bulgaro, Brian Masterson and Gary Staring, Plaintiffs,

v.

CENTRUS PHARMACY SOLUTIONS, Defendant.

No. 02–CV–0560.

United States District Court, N.D. New York.

Dec. 10, 2002.

Dickstein Shapiro Morin & Oshinsky, LLP (Ira Robert Mitzner, Esq., of counsel), Washington DC, for Plaintiffs.

White, Fleischner & Fino (Gil M. Coogler, Esq., of counsel), New York City, for Defendant.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

On May 28, 2002, the plaintiffs commenced the instant action against defendant claiming three causes of action: (1) that defendant Centrus Pharmacy Solutions breached its fiduciary duty to the New York State Teamsters Council Health and Hospital Fund (the "Fund") under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et. seq.* ("ERISA"); (2) that defendant engaged in a prohibited transaction with the Fund in violation of 29 U.S.C. § 1106(a); and (3) state common law breach of contract.

Defendant moves to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposes. Oral argument was heard on October 25, 2002 in Albany, New York. Decision was reserved.

## II. FACTS

The Fund is an employee benefit plan under 29 U.S.C. § 1002(3). (Compl. at ¶ 4.) In or about November 1992, the Fund entered into a Prescription Drug Services Agreement (the "Agreement") with defendant. (Compl. at ¶ 6; Compl. at Ex. A.) Pursuant to the Agreement, defendant was required to:

1. Prepare and issue identification cards to Fund participants;

2. Verify eligibility of participants in the Fund's prescription drug program;

3. Pay the prescription cost of drugs falling within certain categories;

4. Maintain a central pharmacy for the use of Fund members;

5. Process claims and verify that prescriptions fell within the scope of the prescription drug program;

6. Verify the price computation of each prescription;

7. Design and supply forms from the prescription drug program;

8. Submit statements of charges and bi-weekly reports;

9. Maintain records for compliance with Internal Revenue Service regulations and ERISA;

10. Accumulate statistics for the Fund;

11. Provide reports to the Fund;

12. Provide recommendations for changes in the prescription drug program, including adoption of a "preferred drug formulary";

13. Maintain a file for each participant in the Fund's prescription drug program;

14. Provide the Fund with the necessary data to comply with the Health Plan Employer Data and Information Set and National Committee on Quality Assurance guidelines;

15. Create and maintain a computerized system for administering the prescription drug program;

16. Arrange for the payment of qualified prescription drug claims through a network of pharmacies;

17. Determine whether claims qualified for reimbursement in accordance with the relevant and controlling documents;

18. Provide general pharmacy benefit services associated with claims processing, network and prescription benefit management, and mail service provisions of prescription drugs; and

19. Maintain a network of provider pharmacies.

(Compl. at ¶ 8.) In exchange, the Fund paid defendant sixty-two cents for each claim it processed.

In January 1999, defendant recommended a preferred formulary program (the "program") to the Fund. Under the program, Fund participants would be encouraged to use cheaper, preferred, formulary drugs for which they would be responsible for paying a $4.00 co-payment, rather than the standard $8.00 co-payment applicable to non-formulary, single source brand name drugs. (Compl. at ¶¶ 10–11.) The Fund adopted the recommendation and implemented it on May 1, 1999. (Compl. at ¶ 13.)

In implementing the plan, defendant improperly reduced the co-payment for all drugs (including non-formulary, single source brand name drugs) to $4.00. (Compl. at ¶ 14.) Because of this error, the Fund only collected $4.00 for many drugs on which it should have collected $8.00. (*Id.* at ¶ 15.) Accordingly, the Fund lost $4.00 on each non-formulary drug claim processed by defendant. (*Id.*) The Agreement was terminated on December 31, 2000. (*Id.* at ¶ 7.)

### III. *STANDARD OF REVIEW*

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a rea-

sonable doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). Conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y.1990), *aff'd*, 930 F.2d 912 (2d Cir.), *cert. denied*, 502 U.S. 868, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988). " 'A court may dismiss a complaint [under Fed.R.Civ.P. 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## IV. DISCUSSION

Defendant's motion to dismiss presents two primary issues: (1) whether it is a fiduciary within the meaning of ERISA; and (2) whether the facts as alleged in the Complaint state a claim for a violation of 29 U.S.C. § 1106(a).

### A. Whether Defendant is an ERISA Fiduciary

■ ERISA contains its own definition of the term "fiduciary." Pursuant to 29 U.S.C. § 1002(21)(A):

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*See also* 29 C.F.R. § 2510.3–21; 29 C.F.R. § 2509.75–8. "[W]hether ... an ... entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). "An entity need not have absolute discretion with respect to a benefit plan in order to be considered a fiduciary." *Blatt*, 812 F.2d at 812. An entity need only have "sufficient control over at least a part of the [plan] assets to create a fiduciary relationship." *United States v. Glick*, 142 F.3d 520, 528 (2d Cir.1998).

According to the Department of Labor's interpretive bulletin,

a person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75–8; *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996). Thus, the Department of Labor states that persons who "have no

power to make any decisions as to plan policy, interpretations, practices, and procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons" are not plan fiduciaries:

1. Apply rules to determine eligibility for participation or benefits;

2. Calculate services and compensation credits for benefits;

3. Prepare employee communications material;

4. Maintain participants' service and employment records;

5. Prepare reports required by government agencies;

6. Calculate benefits;

7. Orientate new participants and advise participants of their rights and options under the plan;

8. Collect contributions and apply contributions as provided in the plan;

9. Prepare reports concerning participant's benefits;

10. Process claims; and

11. Make recommendations to others for decisions with respect to plan administration.

29 C.F.R. § 2509.75–8.

Upon review of the Agreement (which is annexed to the Complaint), it is clear that the Fund bears ultimate responsibility for all decisions and that defendant is merely carrying out its ministerial obligations under the Agreement, subject to the Fund's control. For example, the Agreement required defendant to maintain a computerized file containing a list of employees, the coverage status of each employee and other information. (Compl. at Ex. A, ¶ 3(A).) However, the list is to be compiled from information "to be provided by the Trust Fund." (*Id.*) Similarly, defendant was obligated to prepare identification cards for plan participants "subject to the prior approval of the Trust Fund as to content, style and format." (*Id.* at ¶ 3(B).) In paragraph 4, the Agreement specified the details of how and when defendant was to reimburse plan participants for the cost of prescription drugs and how defendant was to pay pharmacies. (*Id.* at ¶ 4.) The Agreement also dictated certain terms to be incorporated in any agreements between defendant and provider pharmacies. (*Id.* at ¶ 5.) Additionally, defendant was required to provide various reports and process claims. The Agreement further required defendant to "determine whether such claims qualify for reimbursement *in accordance with the terms of the Plan as provided in this Agreement as same may be amended from time to time by the Trust Fund.*" (*Id.* (emphasis supplied).) Exhibit A to the Agreement specifically delineated what prescription drugs are covered by the plan and under what circumstances they are excluded. (*See* Compl. at Ex. A.) In addition, defendant could make recommendations for changes in the Fund's prescription drug program, but such recommendations had to be adopted by the Fund before being implemented. (Compl. at ¶ 13.) The Agreement also provided that defendant and the Fund were "independent contracting entities" and that "[defendant] and none of its directors, officers, agents and employees are Trustees of the Trust Fund as a result of entering into this Agreement." (*Id.* at ¶ 15.) Furthermore, the Fund retained the ultimate responsibility to "adjust the payments provided hereunder or obtain refunds, as appropriate, in the event its examination discloses any inaccuracies in processing of claims or reimbursements by [defendant]." (*Id.* at ¶ 6(b).) Other provisions of the Agreement similarly recognize that it is the Fund that is administering

and managing the plan. (*See* Compl. at Ex. A, pp. 2, 4, 13.)

It is clear from these provisions and the remainder of the Agreement that the Fund retained control over the management and administration of the plan. Each of the duties imposed upon defendant under the Agreement as set forth *supra* at 2–3 were purely ministerial and did not involve the exercise of discretion regarding the management or administration of the plan, the disposition of plan assets, or the rendering of investment advice for a fee or compensation. Defendant was merely performing ministerial tasks virtually identical to those set forth in 29 C.F.R. 2509.75–8 within a framework of policies made by the Fund and, therefore, is not an ERISA fiduciary.

To the extent that *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814 (S.D.N.Y.1992), suggests a different result, the discussion in that case regarding the defendant's services as not being purely ministerial is not persuasive, particularly in light of the Department of Labor interpretive bulletin found at 29 C.F.R. § 2509.75–8. In addition, *Greenblatt* can be distinguished by the fact that the defendant in that case retained actual control over $150,000 of the plan's money. The *Greenblatt* court found that the defendant's "ability to retain possession of the [cash] reserve despite its clear post-termination obligation under the Contract demonstrates [the defendant's] actual control over the disposition of Fund assets." *Id.* at 821. No such similar facts are presented here.

Although defendant may have received monies from the Fund, it did not retain any control over those monies. To the contrary, it merely took in Fund monies and distributed them to the pharmacies to pay for the participants' prescription drugs. The vast majority of cases hold that the functions performed by defendant are ministerial. *See Geller*, 86 F.3d at 21 (guaranteeing eligibility and remitting premiums is not discretionary); *CSA 401(K) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135 (9th Cir.1999) (preparation of financial reports is ministerial); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir.1992) (plan administrator performing functions spelled out in 29 C.F.R. 2509.75–8 was not a fiduciary); *Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.*, 57 F.3d 608 (7th Cir.1995) (plan administrator that made eligibility determinations in accordance with plan's claims administration procedure was not a fiduciary); *Blatt*, 812 F.2d at 812 ("[M]inisterial functions include the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions.").

### B. *Prohibited Transactions*

■ Plaintiffs' second cause of action alleges that defendant violated 29 U.S.C. § 1106(a)(1)(D) by improperly billing the Fund for the difference in cost based on a $4.00 co-payment for non-formulary drugs, rather than an $8.00 co-payment. Plaintiffs maintain that defendants received funds that were in excess of those that were reasonable and necessary to provide services to the Fund and that "by miscalculating and misapplying the co-pay on non-preferred formulary drugs, its charges to the Fund were not 'reasonable.'" (Pl. Mem. of Law at 8.)

Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), provides, in part, that:

Except as provided in section 1108 of this title: A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he or she knows or should know that such transaction constitutes a direct or indirect transfer to,

or use by or for the benefit of, a party in interest, of any asset of the plan.

Section 1108(b)(2) provides that:

The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions: Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

The parties do not dispute that defendant was a service provider, and thus was a party in interest as that phrase is defined in ERISA. 29 U.S.C. § 1002(14). Plaintiffs do not argue that defendant did not provide services necessary to the operation of the plan. The dispute is whether the exception at section 1108(b)(2) applies to the facts and circumstances of this case.

Defendant received a flat rate of sixty-two cents for every claim it processed regardless of whether it collected a $4.00 or $8.00 co-payment. That was the fee negotiated in the Agreement. (Compl. at Ex. A, ¶ 1(B).) Unlike the cases cited by plaintiffs where the court found that the receipt of excessive compensation could constitute a violation of section 1106, *see Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir.1988) (attorney who was paid for services he did not render); *Guardsmark, Inc. v. BlueCross and BlueShield of Tenn.*, 169 F.Supp.2d 794, 803 (W.D.Tenn.2001) (defendant received unreasonable compensation by overcharging for administrative and run-out fees and wrongfully overpaying claims), defendant did not realize any gain by its alleged mistakes or receive excess compensation. Defendant did not receive compensation for services it did not perform and it did not otherwise benefit from charging $4.00 rather than $8.00. Although the Fund may have paid out more than it was obligated to, defendant did not

receive more than the contractually specified fee. The amount of compensation or remuneration received by defendant did not change as a result of its failure to collect the $8.00 co-payment. While defendant may have improperly performed under the Agreement, it cannot be said that its charges were unreasonable because the Agreement provided for a payment of sixty-two cents regardless of what co-payment defendant collected from the plan participants and defendant did process claims for prescription drug benefits. *See Rutledge v. Seyfarth, Shaw, Fairweather, and Geraldson*, 201 F.3d 1212, 1221–22 and 1222 n. 12 (9th Cir.) (noting that a claim for "inadequate or improper performance" or "substandard performance" as opposed to one for "excessive fees" does not implicate the prohibited transactions provision.), *opinion amended*, 208 F.3d 1170 (9th Cir.), *cert. denied*, 531 U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000). Therefore, the complaint fails to state a cause of action for violation of 29 U.S.C. § 1106(a)(1)(D).

## V. CONCLUSION

Defendant is not an ERISA fiduciary because its services under the Agreement were purely ministerial and did not involve the exercise of discretion over the Fund's administration and/or management. Defendant did not engage in a prohibited transaction with the Fund in violation of 29 U.S.C. § 1106(a)(1)(D) because it obtained reasonable compensation for services necessary for the operation of the plan. Because the federal causes of action are dismissed at this early stage, supplemental jurisdiction over the state law cause of action will not be exercised.

Accordingly, it is

ORDERED that,

1. Defendant's motion to dismiss the Complaint is GRANTED;

2. The ERISA causes of action (First and Second) are DISMISSED with prejudice; and

3. The state common law breach of contract cause of action (Third) is DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.